## DWYER v. NIXON.

(Circuit Court of Appeals, Second Circuit. May 8, 1901.)

No. 157.

**1. INJURY TO EMPLOYE—DANGEROUS PLACE TO WORK.**

Where a servant was asked by the foreman to take a belt off a pulley, the foreman promising to slow down the engine for that purpose, and plaintiff threw the belt off and the machinery stopped entirely, and while engaged in tying the belt up out of the way of other moving parts the machinery was suddenly started, and plaintiff was injured, the case does not come within the rule that the master must supply a reasonably safe place to work in.

**2. SAME—PROMISE TO REPAIR.**

The statement by the foreman that he intended to move the machinery slowly was not a promise or assurance of the master that defects would be cured or dangerous places made safe.

In Error to the Circuit Court of the United States for the Southern District of New York.

This is a writ of error to review a judgment of the circuit court, Southern district of New York, entered in favor of defendant upon a verdict directed by the court. The action was brought to recover damages for personal injuries.

Jacob F. Miller, for plaintiff in error.

Chas. C. Nadal, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

PER CURIAM. Defendant had a machine shop at Elizabeth, N. J., in which plaintiff and five or six other men were employed. This shop and another near it were supplied with power from one engine. While working at his bench, Shaw, the foreman or superintendent, asked him to take a belt off a pulley,—not an unusual performance. The machinery was then running full speed. Inferring that Shaw meant he should take it off while so running, plaintiff replied that he would not take it off, because it was dangerous. Shaw walked away, and then returned and asked him if he would take it off if he (Shaw) had the engine slowed down. To this plaintiff replied that he would, as then there would be no danger. It was necessary that it should be going, otherwise the belt could not be thrown off. Shaw then sent word to the engineer to slow down, and plaintiff got a ladder and proceeded to do the job. He threw the belt off, and the machinery stopped entirely. Thereupon, in further compliance with Shaw's directions, he undertook to tie the belt up out of the way of other moving parts. While engaged in this operation, Shaw started or allowed the machinery to be started suddenly, in consequence of which plaintiff was caught and injured.

The theory of the complaint is fourfold: (1) That Shaw was negligent, careless, unskillful, and intemperate, of which defendant well knew, or ought to have known; (2) that defendant had failed in his duty to provide proper and safe rules and regulations; (3) that defendant had neglected to provide certain clutch pulleys; (4) that a place in which he was put to work, and which was safe when he went into it, became unsafe by the sudden starting of the machinery. Of the first of these charges of negligence there was produced on the trial no testimony whatsoever. There is no suggestion anywhere in the record of any rule or regulation whatsoever which would have been likely to prevent the accident. Some little testimony was given on the subject of clutch pulleys, but it fell far short of showing that they were such usual appliances that their absence would imply negligence. Plaintiff argues at great length, citing many authorities, that the case comes within the rule that the master must supply a reasonably safe place to work in, but we are unable to assent to the proposition. The place was entirely safe, provided the fellow servants of plaintiff moved the machinery slowly. It became unsafe because one or more of them started the machinery suddenly and without warning plaintiff. The statement (or implication of statement, as in this case) of a fellow servant that he intended to move the machinery slowly is not within the rule of "promise" or "assurance" by the master that defects will be corrected and dangerous places made safe. The judgment is affirmed.